UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PG&E CORP.,<br><br>  Plaintiff,<br><br>  v.<br><br>CALIFORNIA DEPARTMENT OF WATER RESOURCES,<br><br>  Defendant. | Case No.  4:22-cv-02833-HSG<br><br>**ORDER AFFIRMING BANKRUPTCY COURT**<br><br>Re: Dkt. No. 8 |

Before the Court is Appellant PG&E Corporation and Pacific Gas and Electric Company, as debtors and reorganized debtors (together, the "Debtors" or "PG&E") appeal of the Bankruptcy Court's *Order Regarding Dispute Between Debtors and California Department of Water Resources* entered on April 22, 2022. BR Dkt. No. 12207.[1] Having carefully considered the briefs,[2] the Court **AFFIRMS** the Bankruptcy Court's order.

I.  **BACKGROUND**

   A.  **PG&E's Bankruptcy And Chapter 11 Plan**

On January 29, 2019, the Debtors commenced voluntary cases for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court"). Significantly, the Debtors needed to propose a plan of reorganization that satisfied the requirements of A.B. 1054. In light of the "increased risk of catastrophic wildfires," A.B. 1054 created the "Go-Forward Wildfire Fund" as a multi-billion dollar safety-net to compensate future victims of public utility fires by "reduc[ing]

---

[1] "BR Dkt. No." references are to the Bankruptcy Court's docket, Case No. 19-30088 (DM) (Bankr. N.D. Cal.).  "Dkt. No." references are to this Court's docket.
[2] Including Dkt. No. 8 ("Appellant's Brief"); Dkt. No. 9 ("Appellee's Opp."); Dkt. No. 10 ("Appellant's Reply").

the costs to ratepayers in addressing utility-caused catastrophic wildfires," supporting "the credit worthiness of electrical corporations," like the Debtors, and providing "a mechanism to attract capital for investment in safe, clean, and reliable power for California at a reasonable cost to ratepayers." A.B. 1054 § 1(a).

For the Debtors to qualify for the Go-Forward Wildfire Fund, however, A.B. 1054 required, among other things, the Debtors to obtain an order from the Bankruptcy Court confirming a plan of reorganization by June 30, 2020. See A.B. 1054 § 16, ch. 3, 3292(b). After more than sixteen months of negotiations among a variety of stakeholders, and following confirmation hearings that spanned several weeks, the Debtors' Plan of Reorganization dated June 19, 2020 ("Plan") was confirmed by the Bankruptcy Court on June 20, 2020 and became effective on July 1, 2020 ("Effective Date").

### B. The CDWR Claims Dispute

#### 1. The Cotenancy Agreement And CDWR's Decision To Terminate

This dispute arises from the termination of a 1984 *Agreement of Cotenancy in the Castle Rock Junction-Lakeville 230- kV Transmission Line* (the "Cotenancy Agreement") between Appellee California Department of Water Resources ("CDWR"), PG&E, and Silicon Valley Power and Northern California Power Agency ("SVP/NCPA"). Under Section 14.3 of the Cotenancy Agreement the termination process begins with the terminating party providing one-year advance notice to all parties. BR Dkt. No. 11889-2 at 36.[3] Under Section 14.5, if all remaining cotenants decide to no longer operate the transmission line, the terminating cotenant must pay removal costs. *Id.* at 36-37. Under Section 14.6, when a cotenant terminates and the other cotenants wish to continue operating the line, the terminating party must pay "financial obligations incurred prior to its effective date of termination." *Id.* at 37-38. Section 13.2 provides that disputes between the parties shall be subject to binding arbitration. *Id.* at 30-33.

On July 30, 2018, CDWR delivered notice to each cotenant of its intention to terminate its participation in the operation of the transmission line. BR Dkt. No. 11889-3. PG&E and

---

[3] For ease of reference, the Court refers to the PDF pagination unless otherwise stated

1  SVP/NCPA initially opposed CDWR's termination pending "payment of its proportional share of
2  reasonable estimated costs associated with decommissioning and removal of the New Line."  BR
3  Dkt. No. 11896 at 12.  On October 18, 2019, CDWR filed a proof of claim in the Chapter 11 cases
4  in the amount of $101,026.75 for overpayment of operation and maintenance fees following
5  termination.  BR Dkt. No. 11889-8.

### 2. CDWR's Termination And The Chapter 11 Plan And Confirmation Order

Following objections by various California agencies, including CDWR, and a hearing on the Debtors' reorganization, the Bankruptcy Court entered the order (the "Confirmation Order") confirming the Plan on June 20, 2020.  BR Dkt. No. 8053.  Under the Plan and Confirmation Order, executory contract disputes were to be resolved by the Bankruptcy Court.  *Id.* at 33-35. Additionally, the Bankruptcy Court retained post-confirmation jurisdiction over matters arising under, arising out of, or related to the Plan.  BR Dkt. No. 8053-1 at 90.

On February 1, 2022, CDWR moved for relief in the Bankruptcy Court, arguing that (1) Appellants sought to negate its termination of the Agreement by contending that the Agreement was "live" and could have been assumed on confirmation of Debtor's plan, (2) CDWR did not owe any removal costs for termination to be effective, and (3) Appellants refused to pay CDWR's claim.  BR Dkt. No. 11887 at 6.  CDWR argued that "[t]here is no authority in the [Cotenancy] Agreement to demand future removal costs from a departing Cotenant when there has been no decision by the Remaining Cotenants to discontinue operating the Line, much less demand payment of such removal costs from a cotenant before a termination can become effective."  BR Dkt. No. 11887 at 12-13.  CDWR argued that in the event of termination, the specific terms in Sections 14.5 controlled over the general terms in Section 14.6.  BR Dkt. No. 11887 at 19 ("Removal costs were negotiated and included in the contract under Section 14.5 only for the situation where all the cotenants decided to terminate the Agreement.").  Additionally, CDWR argued that the matter should not be referred to arbitration because the Bankruptcy Court retained jurisdiction to resolve executory contract and claim disputes.  *Id*. at 6.

One day later, Appellants moved to modify the Plan injunction and compel arbitration,

asserting that CDWR must "pay the remaining parties its proportionate share of estimated costs, including those of operation, maintenance, and removal, prior to terminating its participation in the agreement." BR Dkt. No. 11896 at 7. PG&E argued that the issue of termination inherently encompassed removal cost liability, stating that "CDWR cannot terminate its participation in the Cotenancy Agreement without first complying with its obligation under the Cotenancy Agreement to pay a pro rata share of estimated removal costs to PG&E and the remaining Cotenants." *Id.* at 17.

On March 8, 2022, the Bankruptcy Court granted CDWR's motion and denied Appellants' motion for arbitration. BR Dkt. No. 11999. The Bankruptcy Court held that "[t]he determination of whether the Agreement is an executory contract that may be assumed, and if so under what circumstances and leading to what consequences, is clearly a core matter for determination." *Id.* at 5.

Following the March 8 ruling, the Bankruptcy Court invited further proceedings regarding CDWR's removal cost liability. BR Dkt. No. 11999 at 7-8. SVP/NCPA attempted to intervene, but the Bankruptcy Court denied its motion on March 21, 2022. BR Dkt. No. 12054 at 3 ("[SVP/NCPA] remained on the sideline, casting their fate with the Reorganized Debtors."). The Bankruptcy Court did not make any decision with respect to a separate contract between CDWR and SVP/NCPA titled the "Transmission Services Agreement" ("TSA"). BR Dkt. No. 12147 at 4; BR Dkt. No. 12207 at 3.

### 3. Final Briefing and Adjudication By The Bankruptcy Court

On March 25, 2022, Appellants filed a memorandum stating that they would pay the CDWR claim of $101,026.75 and that no further action by the Bankruptcy Court was needed (including with respect to determining CDWR's removal costs). BR Dkt. No. 12076. Appellants and SVP/NCPA then initiated an ultimately unsuccessful arbitration proceeding on March 30, 2022. BR Dkt. No. 12129-1 at 6-20, 22- 24. On April 13, 2022, the Bankruptcy Court issued a tentative ruling in response to the March 25 memorandum, characterizing PG&E's strategy as an "inappropriate and improper change of position and forum shopping" and stating that the "Debtors simply ignored the direction by this court [to file a brief on removal cost liability]." BR Dkt. No.

4

12147 at 3. On the merits, the Court stated its intent to rule in favor of CDWR "based upon (1) the record that there are no material facts in dispute; (2) that CDWR's interpretation of the applicable sections of the Cotenancy Agreement is correct; (3) that CDWR does not owe any estimated future removal costs or anything else to Debtors and the remaining cotenants under the Cotenancy Agreement; and (4) there are no damages to be assessed, by this court or by arbitration, under that agreement." *Id.* at 3-4. During a hearing later that day, the Court held that an adversary proceeding was not required because "the way this dispute played out afforded both sides adequate due process." Apr. 13, 2022 Hr'g Tr. at 28. The Bankruptcy Court entered its final order on April 22, 2022, BR Dkt. No. 12207, and PG&E appealed on May 5. BR Dkt. No. 12311.

## II.   LEGAL STANDARD

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158. The Court reviews the timeliness of PG&E's appeal de novo. *Saunders v. Band Plus Mortgage Corp. (In re Saunders)*, 31 F.3d 767 (9th Cir. 1994) (per curiam). The Court reviews whether the Bankruptcy Court has discretion to deny a motion to compel arbitration de novo. *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1019 (9th Cir. 2012) ("*Thorpe*"). If the Court determines that the Bankruptcy Court had discretion, the Court applies the abuse of discretion standard. *Id.* The Court reviews whether an adversary proceeding was required under a harmless error standard. *In re Downey Reg'l Med. Ctr.-Hosp., Inc.*, 441 B.R. 120, 123 (B.A.P. 9th Cir. 2010) ("*Downey*"). In assessing the determination of removal cost liability under the Cotenancy Agreement, the Court reviews the Bankruptcy Court's contract interpretation de novo. *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009).

## III.   DISCUSSION

PG&E asserts that the Bankruptcy Court erred in several respects in denying its motion for arbitration and interpreting the Cotenancy Agreement in CDWR's favor. PG&E argues that (A) its appeal is timely; (B) the Bankruptcy Court committed reversible error in denying arbitration as to the liability of removal costs under the Cotenancy Agreement; (C) an adversarial proceeding was required; and (D) the Bankruptcy Court wrongly interpreted the Cotenancy Agreement in CDWR's favor. While the Court agrees with PG&E that its appeal is timely, it finds the

5

remaining arguments without merit, and accordingly affirms the Bankruptcy Court.

### A. The PG&E Appeal is Timely

Because bankruptcy proceedings embrace numerous individual controversies, the rules of finality are "somewhat relaxed." *In re Mayer*, 28 F.4th 67, 70 (9th Cir. 2022) (citation omitted). Courts look to whether an order resolves and seriously affects substantive rights such that there is "nothing more for the Bankruptcy Court to do in that proceeding." *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, S. Ct. 582, 592 (2020); *see also In re Mayer*, 28 F.4th at 71.

On appeal, PG&E contends that the April 22 order was the first final appealable order. Appellant's Reply at 5-6. CDWR, on the other hand, contends that the March 8 order was final and immediately appealable, making this appeal untimely in its entirety. Appellee's Opp. at 1. The Court agrees with PG&E.

Because the March 8 order did not definitely resolve the disputes raised in the motions filed by PG&E and CDWR, the Court finds that the order was not final. The order granted CDWR's motion and denied PG&E's motion, both of which raised the issue of removal cost liability. BR Dkt. No. 11999 at 7. The order did not conclusively foreclose arbitration, at least as to damages, but instead set a briefing schedule for further proceedings. BR Dkt. No. 11999 at 7 (instructing parties that "Debtors have until March 25, 2022, to file a memorandum…. [C]DWR has until April 8, 2022, to file a reply memorandum…. After that the matter will stand submitted unless the court decides to consider oral argument."), 7-8 ("If Debtors prevail on [removal cost liability], the court will revisit [whether] the question of the amount [of] [C]DWR's future liability upon termination should be determined through arbitration or via a damages trial in this court."). While PG&E did not appeal the March 8 order, it did attempt to resolve the dispute by filing its offer to pay CDWR's claim in full within the appeal window. BR Dkt. No. 12076. Responding to this memorandum, the court issued a tentative ruling on April 13 and its final order on April 22. BR Dkt. No. 12147; BR Dkt. No. 12207. Thus, this court determines that the April 22, 2022 order was the first final order such that PG&E's appeal is timely given the "somewhat relaxed" standard

that applies.[4]

### B. The Bankruptcy Court Appropriately Denied Arbitration

#### 1. The Matter Before the Bankruptcy Court Was Not Moot

As a preliminary matter, the Court finds there was a justiciable controversy before the Bankruptcy Court. *See Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (determining that a court must dismiss a case as moot if it cannot effectively grant relief because the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome). Despite PG&E's contention that payment of CDWR's claim resolved the dispute, its agreement to pay did not resolve the matter, because whether the 2019 termination was effective absent a payment of removal cost liability was the threshold issue that would determine whether the Cotenancy Agreement remained executory such that it could be assumed. Even PG&E argued that termination was not effective without resolution of estimated future removal cost liability. BR Dkt. No. 11896 at 7 (arguing that "the Cotenancy Agreement requires that CDWR pay the remaining parties its proportionate share of estimated costs, including those of operation, maintenance, and removal, prior to terminating its participation in the agreement"), 17 ("PG&E's argument [is] that CDWR cannot terminate its participation in the Cotenancy Agreement without *first* complying with its obligation under the Cotenancy Agreement to pay a pro rata share of estimated removal costs to PG&E and the remaining Cotenants") (emphasis added). The Bankruptcy Court thus appropriately identified PG&E's decision to pay CDWR's claim as a belated and strategic attempt to shift issues already before the court to arbitration. BR Dkt. No. 12147 at 3 ("The court regards this tactic of Debtors [as] an inappropriate and improper change of position and forum shopping because they had lost in the forum of their choice, and now were, reluctantly, before this same court to decide what it plainly identified as a critical and discrete issue."). The Court concludes that the issue was not moot, and a justiciable controversy was before the Bankruptcy Court.

---

[4] The Bankruptcy Court entered a docket text order on April 10, 2022 stating the prior March 8, 2022 order was "now-final." But that characterization is not determinative, and did not make that order final in the sense of conclusively deciding the parties' substantive rights.

### 2.     Removal Cost Liability Was A Core Bankruptcy Matter

The Ninth Circuit has instructed that "[non-core] proceedings are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration, whereas core proceedings implicate more pressing bankruptcy concerns." *Thorpe*, 671 F.3d at 1021 (citation and quotations omitted). "Core proceedings consist of all actions arising under title 11 and also those arising in a case under title 11." *In re GACN, Inc.*, 555 B.R. 684, 693 (B.A.P. 9th Cir. 2016). Additionally, certain claims may be so "inextricably intertwined" with core conduct so as to warrant deeming them to be core claims. *See Thorpe*, 671 F.3d at 1022 (affirming the bankruptcy and district court's determination that a breach of contract claim was core because it was inextricably intertwined where adjudication of the claim presented a potential conflict with bankruptcy administration); *see also In re Harris*, 590 F.3d 730, 739 (9th Cir. 2009) (determining that claims for breach of a settlement agreement were core because they were "inextricably intertwined with the sale of estate assets —the literal administration of the bankruptcy"); *In re Harris Pine Mills*, 44 F.3d 1431, 1438 (9th Cir. 1995) (determining that state law claims against the bankruptcy trustee that were "inextricably intertwined with the trustee's sale of property belonging to the bankruptcy estate involved a core proceeding").

On appeal, PG&E contends that the Bankruptcy Court erred in determining that the removal cost liability issue presented a core claim. PG&E asserts that removal cost liability is "unrelated to the core issues of whether the Cotenancy Agreement is executory and the allowance of the claims asserted in the CDWR Claim." Appellant's Brief at 19. CDWR counters that the Bankruptcy Court appropriately interpreted its own order in holding that it had reserved jurisdiction to decide "all disputes related to executory contract and claims issues on confirmation and that such issues were core issues." Appellee's Opp. at 4, 17-18. The Court agrees with CDWR.

The Plan and Confirmation Order expressly reserved jurisdiction for the Bankruptcy Court to resolve executory contract, cure and claims allowance disputes. Sections 34 and 67 of the Plan and Confirmation Order provide that "in the event of an unresolved dispute regarding… any other matter pertaining to assumption, assumption and assignment, or the Cure Amounts required by

8

section 365(b)(1) of the Bankruptcy Code (each, a "Cure Dispute"), such Cure Dispute shall be resolved by a Final Order of the Court," and that if any government entity disputes whether a contract is executory "any such dispute shall be resolved by the Bankruptcy Court." BR Dkt. No. 8053 at 35, 61. Referencing these provisions, the Bankruptcy Court held that "[t]he determination of whether the Agreement is an executory contract that may be assumed, and if so under what circumstances and leading to what consequences, is clearly a core matter." BR Dkt. No. 11999 at 5. Appellants themselves argued that removal cost liability and termination validity had to be resolved together. BR Dkt. No. 11896 at 8 ("CDWR's Proof of Claim cannot be adjudicated in a vacuum without resolution of [the removal cost] issue.").

Because removal cost liability was inherently linked to the parties' rights and obligations in the event of termination, it was inextricably intertwined with the core executory contract and claims resolution issues before the Bankruptcy Court. Thus, the Court finds that the Bankruptcy Court had discretion to deny PG&E's request for arbitration as to this core matter.

### 3. The Bankruptcy Court's Denial of Arbitration Was Not An Abuse of Discretion

The Ninth Circuit has held that "[i]n core proceedings… the bankruptcy court, at least when it sees a conflict with bankruptcy law, has discretion to deny enforcement of an arbitration agreement." *Thorpe*, 671 F.3d at 1021. *Thorpe* instructs that the Bankruptcy Code's purpose is to centralize disputes concerning a debtor's legal obligations and protect creditors and reorganizing debtors from piecemeal litigation. *Id.* at 1023 ("Arbitration of a creditor's claim against a debtor, even if conducted expeditiously, prevents the coordinated resolution of debtor-creditor rights and can delay the confirmation of a plan of reorganization."). On appeal, PG&E contends that arbitration is mandatory under the Cotenancy Agreement and that resolving any removal cost liability does not conflict with the Plan. Appellant's Brief 21-22. CDWR responds that the Bankruptcy Court did not abuse its discretion in denying arbitration because resolution of this issue in arbitration could conflict with the administration of the Plan. Appellee's Opp. at 20. The Court agrees with CDWR.

The Bankruptcy Court appropriately applied *Thorpe*'s principles in denying arbitration.

The Bankruptcy Court found "a risk that an outcome achieved via arbitration, at least on the issues of whether the Agreement was to [sic] the reserved assumption provisions of the Plan at all, and whether [C]DWR could be required to pay anything after it gave its notice of termination, would conflict with those policies articulated by *Thorpe* and memorialized in the Plan and the [Confirmation Order]." BR Dkt. No. 11999 at 6. The Plan expressly provided for Bankruptcy Court jurisdiction over executory contract issues, and CDWR was entitled to pursue its rights under that Plan. The Bankruptcy Court properly applied *Thorpe* in finding that arbitration of the issue raised by PG&E presented a potential conflict, and did not abuse its discretion in so ruling.

### C. The Bankruptcy Court's Decision Not To Require An Adversary Proceeding, Even If Erroneous, Was Harmless.

Under the harmless error standard "if the absence of an adversary proceeding did not cause prejudice, form should not be elevated over substance." *Downey*, 441 B.R. at 127. PG&E argues that the Bankruptcy Court erred in not initiating an adversary proceeding to resolve removal cost liability. The Bankruptcy Court stated that its resolution of the issue was "functionally the same" as an adversary proceeding. Apr. 13, 2022 Hr'g Tr. at 28. The Court agrees with the Bankruptcy Court and determines that even assuming arguendo that it was error not to require an adversary proceeding, any such error was harmless.

The question before the Court is whether the procedural differences between a contested matter and an adversary proceeding prejudiced PG&E. *See Downey*, 441 B.R. at 127. In conducting a harmless error analysis, a court must apply the *Strata* four-factor test, considering whether: (1) the material facts were few and undisputed, (2) the dispositive issues were pure questions of law, (3) neither party expressed any discontent with the contested matter procedures the bankruptcy court utilized, and (4) the reviewing court is satisfied that neither the factual record nor the quality of the presentation of the arguments would have been materially different had there been an adversary proceeding. *In re Strata Title, L.L.C.*, 2014 WL 661174, at *9 (B.A.P. 9th Cir. 2014) ("*Strata*").

While PG&E only argues that the third and fourth *Strata* factors favor reversal, the Court will address all four factors. First, the Bankruptcy Court accurately stated that the material facts

concerning removal cost liability were undisputed because the two parties simply applied their interpretations of the provisions of the Cotenancy Agreement to agreed-upon facts. BR Dkt. No. 11999 at 7 ("There are no material facts in dispute regarding whether DWR should or should not be ordered to pay its share of the net loss upon termination of the Agreement."). Second, the only remaining issues were dispositive legal questions concerning the proper interpretation of the Cotenancy Agreement. BR Dkt. No. 11999 at 7 ("[C]DWR looks to Section 14.5 of the Agreement to insulate it from such a charge because the other parties continued to operate under it," while "Debtors rely on Section 14.7 to hold DWR responsible for its share for termination in the future"). Third, although PG&E did seek arbitration as to removal cost liability, it did not seek an adversarial proceeding until April 13, 2022, despite filing two prior briefs. Apr. 13, 2022 Hr'g Tr. at 9. The fact that PG&E did not seek an adversary proceeding until well into the case, and then did so only orally at a hearing, undermines the persuasiveness of its current argument. Fourth, the Court is satisfied that neither the factual record nor the quality of presentation would have been materially different in an adversary proceeding, because the parties had adequate notice of the issue, submitted extensive briefs addressing it and were granted argument. *See Downey*, 441 B.R. at 129 (determining that no adversarial proceeding was necessary as "[the appellant] has not identified any discoverable fact that would have changed the outcome of the court's ruling"); *see also Strata*, 2014 WL 661174, at *8 (determining that an adversarial proceeding was not necessary as the appellant merely offered "vague and overstated" claims of unfairness).

PG&E argues that the "expedited procedure… submarined it" by (1) requiring it to address removal cost liability – which it claims it never asserted, and (2) denying it the opportunity to assert its claim. Appellant's Brief at 32. These assertions are not supported by the record. The Bankruptcy Court considered PG&E's argument that it was entitled to removal costs and appropriately rejected it. BR Dkt. No. 11896 at 12; BR Dkt. No. 11999 at 7. Most importantly, PG&E fails to show that the procedural differences between a contested matter and an adversary proceeding prejudicially affected the development of the material facts or the legal analysis. *See Downey*, 441 B.R. at 129 (determining that "[the defendant's] proposed discovery and expert testimony would have been inappropriate because both the interpretation of an unambiguous

11

written contract and the meaning of a statute are questions of law").

Accordingly, even assuming (without deciding) that the Bankruptcy Court erred in not permitting PG&E to file an adversary proceeding, any such error was harmless.

### D. The Bankruptcy Court Properly Interpreted The Cotenancy Agreement

PG&E finally argues that the Bankruptcy Court's substantive resolution of the dispute regarding the Cotenancy Agreement was erroneous. The Court reviews the Bankruptcy Court's contract interpretation de novo. *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (determining that contract interpretation is question of law that is reviewed de novo). The Court disagrees with PG&E and finds that the Bankruptcy Court correctly ruled that CDWR did not owe any removal cost upon termination. The Cotenancy Agreement presents two alternative scenarios for making an effective termination following the required advance notice. Under Section 14.5, in which all cotenants terminate, "[i]f the removal is performed at a net loss, [PG&E], or its successor as operator of the New Line, shall be reimbursed by the other Cotenants for their respective shares of such net loss in proportion to their Ownership Interests." *Id.* at 97-98. By contrast, under Section 14.6, when a cotenant terminates and the other cotenants wish to continue operating the line, they may do so effective as of the date the selling cotenant terminates so long as all "financial obligations incurred prior to its effective date of termination" are paid. *Id.* at 98-99. Because without dispute the other cotenants continued to operate the line, the Bankruptcy Court had to resolve the issue under Section 14.6.

On appeal, PG&E contends that that the term "financial obligations" in Section 14.6 encompasses removal costs, and that "there is no reason to apply a different outcome [concerning removal costs] than that dictated by Section 14.5 upon full termination of the Agreement." Appellant's Brief at 33. But that argument is simply inconsistent with the plain language of the agreement, as the Bankruptcy Court found in accepting CDWR's argument and rejecting PG&E's. Section 14.5 explicitly refers to "removal costs" whereas Section 14.6 does not. *See Shivkov v.*

*Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020) ("It is a standard rule of contract interpretation that specific terms control over general ones."); *see also Gen. Ins. Co. of Am. v. Truck Ins. Exch.*, 242 Cal. App. 2d 419, 426 (Ct. App. 1966) (explaining that "a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates"). Courts "do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there." *Dameron Hosp. Assn. v. AAA N. California, Nevada & Utah Ins. Exch.*, 229 Cal. App. 4th 549, 569 (2014). Additionally, the Bankruptcy Court properly interpreted the Cotenancy Agreement in determining CDWR's proof of claim because "a bankruptcy court can only consider an objection to a claim and thus overcome the presumption of its validity by examining the contract itself and the circumstances surrounding its formation." *In re G.I. Indus., Inc.*, 204 F.3d 1276, 1280 (9th Cir. 2000). Thus, because Section 14.5 is unequivocal and controls in the factual situation here over the more general terms in Section 14.6, the Court affirms the Bankruptcy Court's conclusion that CDWR does not owe any removal costs under the Cotenancy Agreement.

## IV.   CONLCUSION

The Court **AFFIRMS** the Bankruptcy Court's ruling in its entirety.[5] The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: 5/10/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[5] Given the holdings in this order, the Court need not address the parties' arguments regarding whether PG&E impliedly consented to jurisdiction or whether the Bankruptcy Court had constitutional authority to enter a final judgment. Appellant's Brief at 35-37; Appellee's Opp. 24-26.

13